May it please the court, Eric Fletcher, pro bono counsel for appellant Curtis Jackson. I'd like to reserve two minutes for rebuttal. Mr. Jackson asked the district court to appoint counsel three separate times. Each time the court denied his request in a matter of days. By the time of Mr. Jackson's third request for counsel, he had survived summary judgment and he'd just been sent to a mental health crisis facility. In light of the seriousness of his case and obvious concerns about his ability to present it at trial, the district court abused its discretion by not appointing counsel. Having heard- Tell me the case which best says that the district court abused its discretion. I would point the court to the decision in Solis. Because? Because there the court noted in remanding the case for further consideration of whether that multiple factors weighed in favor of appointing counsel, those being that the plaintiff was an incarcerated inmate, that he had no legal training, and that the case was headed towards trial. But at that point, the court was looking at the factors and trying to determine the factors. And in this particular case, the district court had the person well in court, and the court determined that they didn't need counsel. And applying the factors, isn't the court's decision on whether to appoint counsel a discretionary one? It is a discretionary decision. So therefore, I don't find Solis being that anybody said as a matter of law the district court had to do that. So I would, again, point the court to the two- I mean, I looked at Solis, and I read what it said. It didn't say, as a matter of law, you must appoint now. Right. It said, let's weigh the factors, as the district court did here, and let's determine it. And they determined that the factors were sufficient to say something. And our test is abusive discretion. It is abusive discretion. That's right, Your Honor. It's pretty tough. Excuse me? It's very difficult to show the- It is difficult, but I think the unique circumstances of this case, that just weeks prior, the case was originally slated for trial in late August, and Mr. Jackson spent more than two weeks in this crisis facility where he had no access to his legal papers. Yes. But when he came out of the crisis center as, what would they say? He was healed or what was- There is a note from the doctor, I think, in the record that says that Mr. Jackson was able to participate in his case. It's unclear whether the doctor, Dr. McKinney- This is the doctor that was treating him during these two-week periods, and he feels mentally he could participate. Yes. Dr. McKinney did state that he could participate. It's unclear from the record whether Dr. McKinney had any idea that Mr. Jackson was expected to litigate the case by himself and that he didn't have counsel. Yes. And- I understand that. But tell me, it's very hard to show the district judge looking at the facts of this case and the person coming out and saying, a doctor saying he could participate. Where do we find an abuse of discretion? That's the question I have. So I would also point the court to the district court's analysis of the second factor in the test. And the second factor asked the district court to evaluate the likelihood of success on the merits. And the district court just has one sentence in their order on the likelihood of success and says that it cannot find that Mr. Jackson is likely to succeed on the merits. I think that was legal error. The court's test does not require- What's the best case for that? Well, so I would again- I mean, the bottom line is you've got the district court going through the test, and he doesn't say enough, so now it's an abuse of discretion? Well, so the district court appeared to require Mr. Jackson to show that he was likely to succeed on the merits at trial. And, of course, that would be paradoxical to require a pro se plaintiff to prove that he was likely to win at trial without  I would point the court to McElyea, which says that a non-frivolous claim is one- where the claim is non-frivolous, and here that's clearly the case. It's gone through summary judgment. So is your best argument that the district court erred in Jackson's motion in denying the motion to appoint counsel? Or is your best case that the district court erred in failing to conduct the competency hearing? Well, so I think in light of the serious- To be fair, nobody asked for a competency hearing. And, of course, and Mr. Jackson was- Not even your client. Mr. Jackson was proceeding pro se, and Rule 17 of the Rules of Civil Procedure says that the district court has an obligation when there is a serious question about the competency of a litigant to present his case when proceeding pro se has a duty to- Again, counsel, that's with the district court looking down and saying, can he proceed or can he proceed? And the district court in this instance, in his discretion, thought he could proceed. That's why I'm having you focus, because it doesn't seem to me that there's any reason to conduct a competency hearing sua sponte if one feels he can proceed. Well, so again- Nothing in the record to suggest they should have done that. So I'm trying to get you to- Are you really saying we're in here because he needed a motion to appoint counsel? That's where he was wrong? Or what are you talking about? Well, so I do think we are really here because Mr. Jackson was entitled to appoint a counsel by the time of his third motion, and the alternative, given the serious issues raised in Mr. Jackson's motion for appointing counsel and the third motion in particular, the court was under an obligation to conduct a competency hearing. They could have had Dr. McKinney's testimony about whether or not Mr. Jackson was able to participate versus actually litigate the case. So how many motions does one make before the judge must have the competency hearing? Well, I think it depends on what the facts are that are alleged in the motion. And it depends on how the person acts and reacts in front of the judge, doesn't it? I think that's right, yes. And in this particular case, the person acted and reacted as he should have in front of this judge, or at least as this judge thought he should have. And in fact, the judge was looking at every one of his motions, giving him consideration in what was going on. Mr. Jackson, again, I would point the court to the third motion, which is at Exeunt Record 423 to 425, where he is pleading with the court to appoint counsel, raising his inability to manage all of the issues in the case. There's briefing on the status conference that occurred on September 3rd. Well, Mr. Jackson's motion for appointment counsel was in the mail. Excuse me. The hearing was on September 2nd. The motion was docketed on September 3rd and denied September 4th. From the record, it appears that Mr. Jackson did not discuss his pending motion for appointment of counsel with the court. So, again, there were reasons to be quite concerned, and to just dismiss Mr. Jackson's request for appointment counsel out of hand on one day of consideration I think was an abuse of discretion. I see that my time has expired. Thank you for your argument. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Jeffrey Fisher. I'm a Deputy Attorney General for the State of California, representing Appalese. In this case, Mr. Jackson competently and ably presented his case to a jury, but he presented a factually implausible scenario and had to admit several damaging facts during the course of the trial, so the jury found for the defense. Now, this Court is generally loathe to disturb judgments based on jury verdicts because of the commitment of resources, both the courts and the litigants, that a full trial in the merits entails. And Mr. Jackson has failed to provide a reason to disturb the judgment in this case. Well, I guess the best argument that counsel makes is that during the middle of this process, he was in this facility getting treatment. He went in. The district court knew he went in. And given that the district court knew he went in there, and in the midst of this, it seems the district court should have done more than just say proceed. Understood, Your Honor. We disagree. We think the district court's— I know you disagree, but what's your best case for that? The best case for that is probably Palmer v. Valdez is a good case for us in assessing the need for counsel. And how does Palmer relate to this particular situation? Well, there is something unique to this situation versus Palmer, but Palmer involved a— I was going to say this is different than Palmer. Yes, Your Honor. Palmer did involve a litigant who was complaining that they did not have the ability to prepare because of— Right. —physical ailments. And the court made accommodations and applied the relevant legal standard and determined that the litigant could proceed to trial. And it turned out that the plaintiff in that case was, in fact, commended by the district court for his performance at trial. And this court considered that when concluding that there was no abuse of discretion in denying the motion for counsel. In this case, the plaintiff moved for appointment of counsel and the district court applied the relevant standard, analyzed Mr. Jackson's apparent ability to articulate his claims pro se in light of their complexity and his likelihood of succeeding on the merits. The court expressly considered the fact that he had had a mental health episode but relied on several factors in determining that that did not impede his ability to represent himself and articulate his claims. The most important of which, I think, is that there was a phone conference at which Mr. Jackson stated that he was able to proceed. He was ready to proceed with the case. In addition to that, the court considered his actual engagement during that teleconference, his ability to articulate himself and make clear his intentions, including his intention to file a motion for reconsideration as to one of the motions in Lemonet, the motions that he filed in June and July, which was prior to this episode, and the letter from the psychiatrist saying that he had stabilized as of early August, which was a month before that hearing and ultimately four months before trial, and that in the psychiatrist's opinion he was capable of attending court and participating in the case. Now, the court didn't give a lot of depth to its assessment that he did not have much of a likelihood of succeeding on the merits, but the court was aware of the merits of the case. It was a, he said, he said case in which Mr. Jackson was going to present one version of events, which we believe was implausible and correctly discounted by the jury, and the defendants all disagreed with that. Now, the factual scenario that Jackson presented was that, I mean, he is not a small man. He acknowledged he is 6'3 and 240 pounds, and that because he is paralyzed from the waist down, his legs are flaccid, and so any attempt to lift him is like lifting dead weight. But his allegation was that Sergeant Mendez, a smaller man, snatched him from his chair, sent him airborne, and slammed him on the ground. And the jury could see, observing the two people, that that was not likely to be true, and Jackson introduced additional implausible facts, such as the fact that he insisted he was vehement, that his hands were not cuffed merely behind his back, were in fact And having committed to that fact, the jury likely concluded that he could not have exited the chair, as he was alleging in the case. So we believe that what did him in was not his absence of counsel, but the facts that he alleged. Actually, at trial he performed quite admirably. He gave a concise but chronological and clear opening statement. He then followed that up with his direct testimony, which was also clear and easy to decipher. He cross-examined each of the defendants and pointed to places where he believed that he had identified inconsistencies between their testimony, and he wrapped it up with a closing argument that had a cohesive theme and recounted where he believed he had successfully impeached the witnesses. So we believe that the Court successfully and correctly concluded that there were no exceptional circumstances here. It did not abuse its discretion in refusing to appoint counsel. Now, I'd like to move back to the evidentiary issues. The Court made some successful and correct rulings on evidentiary issues before trial and during trial, and this Court reviews those issues for an abuse of discretion. And to obtain reversal, it was Jackson's burden to establish both that there was an error and that that error was prejudicial, and that is based in part on rule, Federal Rule of Civil Procedure 61, which says that even if there is, assuming there is, an evidentiary error, it's not a basis to disturb a judgment unless that error affects substantial rights. And in addition to that, this Court can also affirm on any grounds supported by the record. Now, moving first to the prior bad act evidence, the — what Jackson was trying to introduce is evidence of other allegations, other situations in which inmates had alleged that Sergeant Mendez had used excessive force against them. Now, I would point out that Mr. Jackson was unable to identify a single case in which this Court had found that excluding similar evidence under similar circumstances was an abuse of discretion, and that likely has to do with that high standard of review. Now, the district court in this case excluded the evidence on both 404b grounds and 403 grounds. We believe that both of those rulings were appropriate. Under Rule 404b, Mr. Jackson was required to prove four elements to introduce the evidence. One of those was that the evidence was sufficient to establish that those prior incidents actually occurred. In this case, we were dealing with highly contested allegations of use of force, and the Court was aware that if it allowed that evidence to come in, the defendants would bring in additional witnesses who would contest each of those witnesses' accounts of what had happened. So we believe the Court was within its discretion to conclude the evidence wasn't sufficient. We weren't dealing with official reprimands or adjudications. It was just allegations at that point. So within its discretion to find that that element wasn't satisfied and that the evidence should be excluded under Rule 404b. But the Court also properly articulated its rationale for excluding the evidence under Rules 403, finding that the potential for prejudice outweighed, substantially outweighed the probative value of that evidence. And it does so on pages 28 to 32 of the record and, again, on page 15 of the record in ruling on a motion for reconsideration of the exclusion of that evidence. And the two things that the Court pointed to were, I mean, it had already analyzed Rule 404b, which is inherently – has an inherent prejudicial factor. The law is that it is inappropriate for one to consider these prior incidents to infer a character trait and then to infer actions in propensity in this case. And so that is the first type of undue prejudice that the evidence would have presented. Well, as long as you're going to the evidence issues, I think your toughest one is that he would – the Court wouldn't even allow the attendance of the inmate who witnessed the interaction. You're referring to Witness O'Neill? Right. Understood. We believe that the Court correctly ruled that that – that it should not bring that witness to testify and, in effect, effectively excluded that witness's testimony. The witness was going to testify to an event that, at that time, both parties had agreed did not happen. The witness's primary purpose was to say that he witnessed Sergeant Mendez apply the handcuffs to Mr. Jackson. Now, there was previously a claim based on Mr. – of Sergeant Mendez using excessive force in applying those handcuffs, but the Court dismissed that case on some of that claim on summary judgment when Mr. Jackson didn't dispute that Sergeant Mendez wasn't the person to apply the handcuffs. So the case was not a case of a dispute. Kennedy is an issue the plaintiff himself had removed from the case. I'm sorry? It was an issue the plaintiff himself had removed from the case. Yes, Your Honor. Then the plaintiff, having removed that issue from the case, was then seeking to effectively bring more evidence in relating to it. But if one looks at the actual statements in the affidavit of this witness, O'Neill, the statements themselves don't really even infer anything about Sergeant Mendez's state of mind, even at that time, which was several minutes prior, to the extent that they say anything about Mr. Jackson's demeanor, that he was calm and which the appellant believes was a misspelling of calm. Nobody contested that Mr. Jackson appeared calm, at least on the walk to the infirmary and during the medical examination. So the evidence doesn't appear to be relevant to the claims that still remain in the case. I see I'm about out of time. I will go ahead and wrap up. We don't believe that Mr. Jackson has presented any issue that would warrant disturbing the judgment after a fully litigated trial in this case, so we ask that the Court affirm. Thank you. Thank you. Do you reserve some time? Yes, Your Honor. Thank you. I'd like to turn briefly to the allegation of factual implausibility in Mr. Jackson's claims. Mr. Jackson is a paraplegic. He was undisputably handcuffed, and Sergeant Mendez's testimony was that Mr. Jackson threw himself from his wheelchair, that he became quite agitated in the medical facility, then threw himself from his wheelchair, then immediately calmed down as Sergeant Mendez then tried to assist him back into the wheelchair and uncuffed him. So as far as factual implausibility goes, it seems that Sergeant Mendez's version of events was also was itself factually implausible. Nurse Cimante, who was indisputably there in the facility, testified that she had no recollection of this event whatsoever. I'd also like to turn briefly to the O'Neill testimony, which I think goes to the factual plausibility of what happened. It's true, Mr. O'Neill's affidavit did mention who handcuffed Mr. Jackson, but the affidavit made clear that Mr. O'Neill saw or heard statements that Mr. Jackson was making at that time to Sergeant Mendez and the other officers present, and that was directly relevant to what then happened in the medical facility, where there were no other witnesses who were present. It went directly to Sergeant Mendez's version of events that Mr. Jackson became so agitated that he would throw himself deliberately from his wheelchair. It's implausible that that would be the case if Mr. Jackson was calm just moments earlier. If the Court has no further questions, thank you. Appreciate your argument, counselors. Thank you for serving pro bono. We appreciate it. We felt the case needed a lawyer, and the lawyers in this area have been generous at their time when we felt we needed one to assist us. Thank you very much for that. And Wallace said it better than I would have said it, so I'm glad that he spoke up. Case 1573584 is submitted on the brief.
judges: Wallace, N.R. Smith, Batts